BARNS, PAUL D., Associate Judge.
The lower court sustained the defendants’ motion to dismiss plaintiff’s complaint whereupon appellant-plaintiff prosecuted this appeal and assigns as error the order sustaining the motion. We fail to find error and affirm.
The appeal in this case was prosecuted as an appeal from a final decree. The appeal was from an order only sustaining a motion to dismiss. The lower court did not dismiss the action and it is still pending in the lower court. This court acquired jurisdiction of the case by the appeal from the interlocutory order.
Counsel for appellant has substantially restated the claim of appellant in his brief which in substance is as follows:
*681 Complaint
In or about January, 1958, lands known as Lilac Terrace lay outside the limits of the City of Orlando, and the owner of said lands, Central State Development Corp. (an appellee herein), hereinafter called “Central”, desired to have the same annexed to the City of Orlando in order to secure municipal benefits which included, primarily, sanitary sewer service. At said time, appellee, Herbert A. Ross, hereinafter called “Ross”, who, at all times pertinent hereto, was President of Central, learned from certain employees of the City of Orlando that said lands could be annexed to the city only if the standard “Development Agreement” was entered into with the city. Appellee, Central, by and through Ross, executed such an agreement which, among its terms, required the furnishing of sanitary sewer service lines which could transmit sewage from the Lilac Terrace Development to the city sewage treatment plant.
Ross was advised at the time, by said city employees, that appellant was preparing to install a sanitary sewer line on Griffin Road to which the Lilac Terrace sewer lines could be connected but only if the appellant’s line was installed at a depth greater than the then contemplated depth necessary for the exclusive use of the sewerage line by Dover Shores Eighth Addition. Ross was further advised by said city employees that there was not then existing any other sanitary sewer service which could be utilized by Lilac Terrace, and that unless Ross could arrange for the said Dover Shores Eighth Addition sewerage line to be installed much deeper, it would be necessary for Central to construct at its own expense a sewage lift station which would cost approximately $9,000.
Ross at this time was advised by said city employees that it was customary for a developer making use of another developer’s sewerage line, to pay for any additional costs incurred to make the sewerage line available to the subsequent developer.
Thereupon, Ross employed O’Neal, then in the employ of appellant, who advised that use by Central of the Dover Shores Eighth Addition sewerage line would be the most economical and practical way for Lilac Terrace to obtain the required sanitary sewerage services, and O’Neal further advised that it would be necessary for Central to pay the added costs incurred in deepening the sewerage line beyond the depth necessary to serve only Dover Shores and Ross replied that he and/or Central would pay to appellant the additional cost which would result from designing and laying the Dover Shores sewer line to said increased depth, and he directed O’Neal to design the Dover Shores Eighth Addition sewerage lines so that the deeper installation of the sewer lines to connect Lilac Terrace would be accomplished and thereafter, to let a contract for the laying thereof.
In accordance with the instructions of Central and Ross, O’Neal did design said sanitary sewer line for Dover Shores Eighth Addition to such an increased depth so that it would accommodate Lilac Terrace, and a contract for the installation of said sewerage line in accordance with said design was let by O’Neal to West Construction Co., said contract being between appellant and West. At the time of the letting of said contract, appellant was unaware that the sewerage lines had been designed to accommodate any development other than Dover Shores Eighth Addition, and appellant was entirely unaware of any Agreement between Ross and/or Central and O’Neal relating to the design and laying of said sewerage line or to payment therefor.
Not until February, March or April, 1958, the exact date being unknown to appellant, did appellant learn of the participation by the appellees in conferences regarding the design and laying of the sewerage line, and then appellant learned it only through. *682 a visit by one of its Officers to the site of the sewerage line installation. Said Officer, C. W. Jamerson, observed the unnecessarily deep excavation and, upon inquiry, was informed of the facts of the case as herein-before related, and was informed that Ross had specifically agreed that payment would be made by him or Central to the appellant for any additional expense caused to him through deepening of the sewerage line. And at this time, appellant was informed by O’Neal that no amount of the additional cost would be saved by filling, because work had advanced so far toward completion. On or about March 26, 1958, said C. W. Jamerson learned that the additional cost for the increased depth of the sewerage line, made necessary by Ross’ instructions to O’Neal was approximately $5,408.03.
Relying on the promise of Ross to O’Neal that he (Ross) or Central would reimburse the appellant for the additional cost caused by Ross’ instructions to O’Neal to design the sewerage line to accommodate Lilac Terrace, and subsequent laying of same, appellant did thereafter pay O’Neal the full amount for the designing and laying of the sewer line, expecting to be reimbursed therefor by the appellees or one of them. However, upon demand, appellees have persistently denied that any promise was made by them or one of them to pay for the deepening of the sewerage line.
However, Central has not hesitated to take advantage of the deepened sewerage line, and has in fact connected the sewerage pipes leading from Lilac Terrace homes to the Griffin Road sewer line, and has, accordingly, taken advantage of the improvement which Central and/or Ross caused to be made but for which they and each of them .refuse to pay.
Conclusion
Appellant’s complaint failed to show grounds for equitable relief and we affirm the order sustaining the motion to dismiss; however, it appears that plaintiff’s remedy is an action at law. According to the complaint, work has been done by the plaintiff for the defendants at the request of the defendants and the defendants have expressly or impliedly promised to pay therefor — a case in indebitatus assumpsit. This is so even though plaintiff did not know it when the work was done and even though the request was not directed directly to the plaintiff, but to one in privity with the plaintiff.
The order appealed from is affirmed and upon remand we direct that the case be transferred to the law side of the court with leave of the plaintiff to thereafter file an appropriate complaint seeking damages as in actions at law. Fla.R.C.P., Rule 1.39, 30 F.S.A.
KANNER, Acting Chief Judge, and SHANNON, J., concur.