In re NATURAL INTERIORS, INC., Debtor.

Jeanette E. TAVORMINA, as Trustee of Natural Interiors, Inc., Plaintiff,

v.

SOUTHEASTERN FLORIDA PROPERTIES, INC., a Florida corporation, Defendant.

Bankruptcy No. 80–00748 BKC–SMW.
Adv. No. 81–0205 BKC–SMW–A.

United States Bankruptcy Court, S. D. Florida.

June 23, 1981.

Barbara Phillips, Phillips & Phillips, Miami, Fla., for plaintiff.

Martin Sandler, Broad & Cassel, Miami, Fla., for defendant.

## FINDS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come on to be heard upon an Adversary Complaint filed by Jeanette E. Tavormina, Trustee of the Debtor estate, Natural Interiors, Inc.; the Court having heard testimony and examined the evidence presented, observed the candor and demeanor of the witnesses, considered the pleadings and arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law.

The Trustee has filed an Adversary Complaint seeking to collect accounts receivable of the Debtor which are money or property of the estate.

Most of the material facts are either undisputed or not the subject of serious contention. Prior to instituting proceedings under Chapter 7 of the Bankruptcy Code, Natural Interiors, Inc., ("Debtor") owned and operated a furniture manufacture and supply business. During the course of its operation, the Debtor and the Defendant herein, Southeastern Florida Properties, Inc. ("Southeastern") entered into a written contract on April 2, 1980, in the sum of $24,920.00, less a 10% discount for a total sum of $23,429.12, regarding purchase by and delivery to Southeastern of wooden moldings for a construction project known as "Olympus", (Plaintiff's Exhibit 1).

The written contract was subsequently followed up with a purchase order from Southeastern to the Debtor signed by the "purchasing agent for Southeastern" (Plaintiff's Exhibit 2).

The Debtor did not manufacture the specific molding required by Southeastern. Debtor, therefore, in a transaction separate and apart from its contract with Southeastern, ordered the molding on open account from a company operating in New York known as Old World Moulding and Finishing, Inc. ("Old World"). The apparent terms of the sale by Old World to the Debtor were list price less 30% discount for a total of $16,954.00.

The contract between the Debtor and Southeastern entailed purchase and delivery of two parcels of moldings. On May 17, 1980, the first parcel of moldings were delivered by the Debtor to Southeastern on the Olympus project job site as is evidenced by signed shipping order (Plaintiff's Exhibit 3).

No payment was made by Southeastern for the goods. The goods received in the first delivery had an estimated value of $4,000.00, according to testimony by witness for Southeastern.

The source of the controversy between the Debtor and Southeastern arose during delivery of the second installment of molding. On May 19, 1980, Old World attempted to deliver moldings to the Debtor. A bill for freight charges was presented to the Debtor in the sum of $1,350.00 (Defendant's Exhibit B), which the Debtor was unable to satisfy.

The shipper then made demand upon Southeastern for payment, whereupon the charge was paid by Southeastern.

Thereafter on May 30, 1980, Southeastern received a letter from Old World requesting $16,954.00. The Court finds that payment was made by Southeastern directly to Old World. No payment was made by Southeastern to the Debtor for goods received in installment one or two.

On June 23, 1980, the Debtor filed a Chapter 7 Petition wherein it listed the sum of $10,429.12 as a liquidated debt owing the Debtor.

The Plaintiff-Trustee, in assuming the position of the Debtor, argues that if payment had been made to the Debtor for the first installment of the contract, there would have been available funds to pay the freight charges on the second installment and thereafter pay the supplier.

The Defendant, Southeastern, argues that the breach by the Debtor to deliver goods in the second installment gave rise to a cancellation of the entire contract whereby the Defendant could seek to purchase the goods at a cheaper price by direct dealing with the supplier.

Based upon all the evidence, the Court so finds that the initial installment of the contract was fully and satisfactorily performed. In Florida it has been held in the Supreme Court case of *Moon v. Wilson*, 100 Fla. 791, 130 So. 25 (1930) that, "If the contract price of the building is to be paid by installments on completion of certain specified portions of the work, each installment becomes a debt due the builder as the particular portion specified is completed; . . ."

The rule that a party who has failed to fully perform his contract cannot recover on the contract for part performance, applies only to indivisible and not severable contracts (17 Am.Jur.2d Contracts, Parag. 386).

This Court finds that the contract entered into by the Debtor and the Defendant was severable and as such does not preclude recovery on that portion fully performed. ". . . There may be recovery on a contract for part performance of a divisible contract. Furthermore, the rights to such recovery are not barred by subsequent breach by the Plaintiff or an abandonment of the contract." (Id. at para. 386).

It is well settled that where services are rendered or materials furnished by one for another, the law presumes that such goods and services are given and received in the expectation of being paid for and imply a promise to pay what they are reasonably worth. *Symon v. J. Rolfe Davis, Inc.*, 245 So.2d 278 (1971 Fla.App. 4th District). This principal is well established in the law and prevents unjust enrichment of one party at the expense of the other.

Hence Defendant's obligations to pay the Debtor the reasonable value of the goods received and the services performed by the Debtor in obtaining the goods in the first phase of the contract were not extinguished. Accordingly, the Court finds that the Defendant is obligated to the Trustee for the sum of $4,800.00 representing the value of the goods and a 20% profit on goods sold as is contemplated in the contract between the Debtor and its supplier and the contract between the Debtor and the Defendant.

The Court further finds that the Debtor failed to perform under the terms and conditions as to the second installment of the contract.

It has been held by several courts in Florida that where a contract is violated by one of the parties thereto, the other party is released from the obligations which he had assumed under the contract (11 Fla.Jur.2d, 'Contracts', parag. 169).

Plaintiff is not, therefore, entitled to recover the full contract price due to the failure to complete delivery of the goods required in the second installment of the contract. A party to the contract cannot take advantage of his own wrong doing to avail himself of the non-performance which he has caused (11 Fla.Jur.2d, 'Contracts', parag. 211). Therefore, Plaintiff's claim for the collection of the accounts receivable in the full sum of $10,429.12 is denied.

In summary, considering the evidence presented by the record in this cause in light of the applicable legal principals, the Court finds as a matter of fact and concludes as a matter of law that there is a debt due the Trustee by Southeastern Florida Properties, Inc. in the amount of $4,800.00.

Defendant's counterclaim for damages caused by the Debtor is denied.

A Judgment shall be entered for the Trustee in accordance with the findings expressed herein.