R.C. HILTON ASSOCIATES, INC.,
Plaintiff-Appellant,

v.

STAN MUSIAL AND BIGGIE'S INC.,
Suncoast International Inns, Ltd., Edward J. Stern, Mariemont Investment,
E.J. Stern, Inc., Defendants-Appellees.

No. 82–5041.

United States Court of Appeals,
Eleventh Circuit.

April 11, 1983.

Rehearing Denied June 9, 1983.

Opinion on Rehearing, 11th Cir., 706 F.2d 1171.

Wightman, Weidemeyer & Maynor, Carleton L. Weidemeyer, Clearwater, Fla., for plaintiff-appellant.

Elihu H. Berman, Clearwater, Fla., for defendants-appellees.

Before GODBOLD, Chief Judge, RONEY, Circuit Judge, and PITTMAN *, District Judge.

GODBOLD, Chief Judge:

A real estate broker, R.C. Hilton Associates, Inc., brought this action to recover a

---

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by

designation.

commission on the sale of a hotel. Initially Hilton's agent visited the hotel to determine whether it was for sale. An agent of Stan Musial & Biggie's, Inc. (Musial), the owner, advised Hilton that the hotel might be for sale for $4.25 million, net to owner. Musial stated that it did not intend to pay any sales commission and that Hilton would have to make arrangements for its commission with the buyer. Hilton subsequently initiated discussions between Musial and Edward Stern. After a short period of negotiations (in which Hilton did not participate) Stern agreed to purchase the hotel for $4.12 million. No commission was paid to Hilton.

Hilton brought suit against Musial and Stern in Florida state court. The defendants removed the case to federal court based on diversity.

The complaint contains three counts: (1) a breach of contract action against Musial; (2) a claim of tortious interference with a business contract against Stern; and (3) an unjust enrichment claim against Musial for the value of services rendered. The case was referred to a United States Magistrate acting as a special master pursuant to Fed. R.Civ.P. 53. After a nonjury trial the magistrate made findings of fact and conclusions of law and recommended that judgment be entered against Hilton on all counts. The district court adopted and confirmed the magistrate's findings and conclusions. We affirm.

The district court ruled that Hilton had neither an express nor implied contract with Musial. Hilton argues that the district court's conclusion that no contract existed is inconsistent with its findings of fact. The court found that Musial told Hilton that "anything over $4.25 million is yours." Hilton contends that in making this statement Musial agreed to pay a commission. To support this contention Hilton relies on the court's statement that "since the sale price was less than [$4.25 million] there is no basis for a claim predicated upon an express agreement." According to Hilton, the court concluded that an agreement would have existed had the price exceeded $4.25 million. This argument, however, is expressly refuted in both the findings of fact and conclusions of law where the district court explicitly stated that no contract existed.

Hilton next argues that, even if no formal agreement existed, a broker is entitled to recover a commission for services rendered in the sale of real estate.

> [I]n the absence of any special agreement, when a seller places property with a broker for sale, he impliedly agrees to pay a customary commission to the broker.

*Kerdyk v. Hammock Oaks Estates, Inc.,* 342 So.2d 833, 835 (Fla.App.1977).

■ The authorities cited by Hilton are inapposite. In the case before us Musial did not place the property with Hilton for sale; Hilton obtained no listing. Also, Musial explicitly informed Hilton that it did not intend to pay a sales commission. "A broker cannot recover for his services unless they were rendered at the express or implied request of his employer ...." *City Builders' Finance Co. v. Stahl,* 90 Fla. 357, 106 So. 77, 78 (Fla.1925); *George G. Massey & Assoc. v. Borgemeister,* 297 So.2d 577 (Fla.App.1977). The finding of no contractual liability should be affirmed.

Hilton seeks recovery from Stern for malicious interference with a "business contract." The district court concluded: "Although a claim for tortious interference may be based upon a contractual agreement which is not legally enforceable, no recovery is allowed if there is no contractual relationship at all." On appeal Hilton argues that the existence of a contract is not necessary in order to recover for tortious interference with a "business relationship." Even assuming that the court should have liberally interpreted Hilton's claim for tortious interference with contract as a claim for tortious interference with business relationship, *see Smith v. Ocean State Bank,* 335 So.2d 641 (Fla.App.1976), Hilton has failed to establish its right to recover.

■ To establish a claim for tortious interference with business relationship the plaintiff must prove:

the existence of a business relationship under which the plaintiff has legal rights; an intentional and unjustified interference with that relationship by the defendant; and damage to the plaintiff as a result of the breach of the business relationship.

*Fearick v. Smugglers Cove, Inc.,* 379 So.2d 400, 403 (Fla.App.1980).

> Initially, the broker had the burden of establishing an advantageous relationship with the seller. A broker can not recover for his services unless they were rendered at the express or implied request of his employer and a contract for services will not be implied unless the vendor knows or has reasonable grounds to believe that they were rendered with the expectation of receiving payment therefor.

*Retzky v. J.A. Cantor Associates, Inc.,* 192 So.2d 24, 26 (Fla.App.1966). Hilton failed to prove that its services were rendered at the express or implied request of Musial. Having failed to establish an advantageous relationship with the seller, Hilton's tort claim against Stern fails.

■ Hilton also seeks recovery from Musial under an unjust enrichment theory. The district court denied relief, concluding:

> the Florida cases discussing broker's commissions state quite emphatically that a broker is not entitled to a commission for his services unless there is either an express contract, or one that is implied from the factual situation. The authorities thus negate the theory of unjust enrichment as a basis for the recovery of a broker's commission.

The parties did not cite, nor did our research reveal, any precedent inconsistent with the district court's decision. Even assuming that a broker could recover under an unjust enrichment theory, Hilton's claim would still fail. In *Yeats v. Moody,* 128 Fla. 658, 175 So. 719, 720 (Fla.1937), the Florida Supreme Court stated:

> It is well settled that where services are rendered by one person for another which are knowingly and voluntarily accepted, without more, the law presumes that such services are given and received in the expectation of being paid for, and will imply a promise to pay what they are reasonably worth.

In the present case Musial clearly informed Hilton that it did not intend to pay a sales commission. Thus, Hilton's services could not reasonably be "given and received in the expectation of being paid for ...."

AFFIRMED.