**In the Matter of MUNZENRIEDER CORPORATION, Debtor.**

**Bankruptcy No. 83–429.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 30, 1986.

Raymond C. Farfante, Jr., Tampa, Fla., for Munzenrieder Corp., debtor.

Roberta A. Colton, Trenan, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Tampa, Fla., for European Asian Bank.

ORDER ON MOTIONS FOR SUMMARY
JUDGMENT ON OBJECTION TO
CLAIM # 170

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a confirmed Chapter 11 case and the matters under consideration are two Motions for Summary Judgment. The first was filed by TMC United Industries, f/k/a Munzenrieder Corporation, the Debtor, who originally commenced this particular proceeding under Chapter 11 of the Bankruptcy Code. The second Motion for Summary Judgment was filed by European Asian Bank (Bank). The claim at issue in this proceeding is the Bank's claim filed in the amount of $250,000 plus interest. The claim was filed with the following supporting documents: A telex by the claimant to the Bank of America International dated December 23, 1982 which outlined the terms of the Bank's standby irrevocable letter of credit # 905/34187; a letter by the Southeast Bank addressed to the Bank dated April 18, 1983, which included a signed statement as to the default by Munzenrieder, the Debtor, on its obligation due to the Southeast Bank and also a draft in the amount of $250,000 on sterling dated April 18, 1983 drawn in favor of the Southeast Bank and issued on behalf of Lee Wah Cane Furniture, PTE Ltd.; a telex addressed to the Southeast Bank dated April 26, 1983; a telex by the European Asian Bank addressed to the Southeast Bank dated April 29, 1983; and a telex by the Southeast Bank to the European Asian Bank dated May 2, 1983.

The Debtor did not file any supporting documents or affidavits with its Motion for Summary Judgment, however, it contends that, as a matter of law, it is entitled to a judgment because the proof of claim on its face indicates that the Debtor is not indebted to the Bank in any amount.

The Motion for Summary Judgment filed by the Bank was accompanied by the affidavit of Jimmie Lee Young, an employee of the Bank in Singapore. The facts recited in his affidavit, which are uncontradicted by a counteraffidavit are as follows:

On December 23, 1982 the Bank issued an irrevocable letter of credit in favor of Southeast Bank in the amount of $250,000 which was issued upon the application of Lee Wah Cane Furniture, PTE Ltd. (Lee Wah Cane). Lee Wah Cane is a related company to the Debtor, even though Lee Wah Cane is not a parent corporation of the Debtor, but both corporations have been owned at one point by the same parent, Interleeholdings H.K. Ltd. At the time of the transaction, Munzenrieder had a revolving line of credit with Southeast and was already indebted to Southeast in the amount of $1,500,000.00, an amount far in excess of the $250,000 credit line.

The letter of credit provided that payment would be made upon Munzenrieder's default on its obligation under the revolving line of credit with the Southeast Bank. Upon default, the Southeast Bank would be permitted to make a request to honor the letter of credit at once.

On February 24 Southeast attempted to draw on the letter of credit by issuing a site draft accompanied by a letter which stated that Munzenrieder had defaulted on its obligation to the tune of $1,500,000. That amount represented the full principal plus the accrued interest due to Southeast Bank under the irrevocable letter of credit. Inasmuch as Southeast did not comply with the instructions contained in the letter of credit, Southeast prepared a second site draft on April 18, 1983 which was accompanied by a signed statement by Southeast stating that the obligation of Munzenrieder resulting from the revolving line of credit was in default and Southeast represented that the draft represented the full principal plus accrued interest due to Southeast Bank.

In response, the Bank sent a telex to Southeast on April 25, 1983 to confirm that the Bank would be subrogated to the right of Southeast against Munzenrieder and to request information regarding the security interest held by Southeast. Having received no answer, the Bank sent another similar telex on April 29, 1983 to Southeast. By a telex dated May 2, Southeast advised the Bank that the obligation of Munzenrieder to Southeast was totally unsecured. The Bank subsequently authorized the payment on the letter of credit to Southeast and the payment was, in fact, made.

It further appears from the record that the purchaser of the irrevocable standby letter of credit, Lee Wah Cane, is in a liquidation in Singapore and that because all of his assets are heavily encumbered, the unsecured creditors of Lee Wah Cane will not receive any distribution. The assets of Lee Wah Cane are totally insufficient even to meet in full the secured claims and the claims which are entitled to priority under the applicable local law.

Based on the foregoing, it is the contention of the Bank that it is entitled to have its claim recognized in full, either under the theory of equitable subrogation or, in the alternative, the theory of unjust enrichment.

In opposition to the claim of the Bank, it is the position of the Debtor that it had no dealings whatsoever with the Bank; it is not obligated to the Bank on any contract; and, therefore, the claim of the Bank filed in this proceeding cannot be recognized and should be disallowed.

■ Considering the respective Motions for Summary Judgment, it should be noted at the outset that a Proof of Claim filed with substantial conformity to the official form BOF 19 is presumed to be valid. *In re Global Western Development Corp.*, 759 F.2d 724 (9th Cir.1985). While there is a rebuttable presumption, there is no doubt that the Debtor has the burden of going forward with the evidence in rebuttal. The Debtor relies on the Proof of Claim itself, together with the documentation attached to the Proof of Claim to overcome the presumptive validity of the claim. Based on the limited record, one may conclude that the Debtor is correct and the Proof of Claim, on its face, clearly indicates that this Debtor had no direct creditor-debtor relationship with the Bank, thus, it is not indebted to the Bank in any amount.

Obviously this approach would be a gross oversimplification of the real issue which is, can this Debtor be held liable to the Bank for $250,000, the amount paid by the Bank under the terms of the irrevocable letter of credit. The documentation attached to the Proof of Claim and the affidavit leave no doubt and it is not seriously disputed that Southeast, upon receipt of the $250,000 from the Bank, applied the same to the past due account of the Debtor and credited the outstanding loan balance by $250,000. Thus, it is clear that the ultimate beneficiary of the transmittal of funds, in accordance and in full compliance of the standby irrevocable letter of credit, was the Debtor.

■ From the foregoing, it appears that while there may be no genuine issues of material fact, the Debtor is still not entitled to a judgment as a matter of law and an order disallowing the Bank's amended claim.

This leads to the consideration of the Bank's Motion for Summary Judgment. As noted earlier, the Bank also contends that there are no genuine issues of material fact and that, based on this record, the Bank is entitled to a judgment as a matter of law. The Bank's contention that it is entitled to be recognized as a creditor of the Debtor and its claim allowed as filed is based on the doctrine of equitable subrogation, or, alternatively, the theory of unjust enrichment.

## EQUITABLE SUBROGATION

The concept of equitable subrogation is a well recognized principle of equity jurisprudence. It is a remedy borrowed from civil law. *Prairie State Nat. Bank v. U.S.*, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896).

■ Equitable subrogation is a legal fiction which arises by operation of law where one having a liability, a right, or a fiduciary relation pays a debt owed by another under circumstances in which he is in equity entitled to the security or obligation held by the creditor whom he has paid. *Fortenberry v. Mandell*, 271 So.2d 170 (Fla. 4th DCA 1972). The right is not accorded to a volunteer, *Id.*, and only applied if there is no outstanding or superior equity, *Dantzler Lumber and Export Co. v. Columbia Casualty Company*, 115 Fla. 541, 156 So. 116 (1934). If the doctrine applies, the one who has paid the debt is entitled to suceed to all the remedies which the creditor possessed against the original obligor. *In re Minnesota Kicks, Inc.*, 48 B.R. 93 (Bankr.D.Minn.1985); *Whyel v. Smith*, 101 Fla. 971, 134 So. 552 (1931).

■ In order to have the doctrine available, the party invoking it must establish (1) that he paid the debt; (2) that he had a liability, right or fiduciary relationship which equated a direct interest in discharging the debt or lien; and (3) that no injustice is visited on the other party by applying equitable subrogation. *North v. Albee*, 20 So.2d 682, 683 (Fla.1945).

■ In the present instance it is without dispute that the debt owed by the Debtor to Southeast Bank was paid by the funds transmitted by the Bank. The Bank, however, had no direct or indirect interest in the discharge of the Debtor's debt to Southeast Bank. It merely honored the standby irrevocable letter of credit by Lee Wah Cane according to its terms. The letter of credit was issued by the Bank only upon the payment of a hefty premium in addition to security granted by Lee Wah Cane, which at the time appeared to be safe and adequate. The fact that it turned out to be different is without legal significance and means nothing more or less than that the Bank entered into a transaction which might have appeared to be sound and profitable but which turned out to be a total loss, a fact legally meaningless and insufficient to invoke the doctrine of equitable subrogation.

There is no question that the Bank had nothing whatever to do with the Debtor and certainly was not at any time liable on the debt owed by the Debtor to Southeast Bank. It is clear that subrogation is not available to one who simply pays his own debt, as the Bank did in this case. *Meyer v. Levy*, 169 So.2d 339 (Fla. 3d DCA 1964).

For these reasons, the cases cited by the Bank in support of its claim based on equitable subrogation furnish no solace to the Bank. The Bank cites the case of *Minnesota Kicks, supra,* which superficially resembles the facts involved in the matter under consideration since it also involved a letter of credit, but that is where the resemblance begins and ends. This is so because in *Minnesota Kicks* it was the purchaser of the letter of credit who sought subrogation and not the issuer. Further, the party who procured the letter of credit had a direct interest in the discharge of the debt because it operated as a discharge of a lien on the property of the party who procured the letter of credit.

### UNJUST ENRICHMENT

■ It is a well recognized principle that one person should not be permitted unjustly to enrich himself at the expense of another, and should be required to make restitution of all the property or the benefits received, retained or appropriated when it appears to be just and equitable. In that case, restitution shall be made provided, however, that the action involves no violation or frustration of law nor is it contrary to public policy either directly or indirectly. See *Yeats v. Moody,* 128 Fla. 658, 175 So. 719 (Fla.1937); *Jamerson-Lawson Corp. v. Central State Development Corp.,* 121 So.2d 680 (Fla. 2d DCA 1960). When a person retains money or benefits which in justice and equity belong to another, the theory of unjust enrichment may compel restitution. *Calhoun v. Corbisello,* 100 So.2d 171 (Fla.1958). Thus, one who has conferred the benefit upon another solely because of a basic mistake of fact induced by a non-disclosure of material fact, may be entitled to a restitution on the doctrine of unjust enrichment. *Central Bank & Trust Co. v. General Finance Corp.,* 297 F.2d 126 (5th Cir.1961). The theory is basically bottomed on the quantum meruit principle, that is, one who conferred benefit is entitled to be compensated for it, although the two theories are not identical in approach. Unjust enrichment always presupposes an inequitable and unfair conduct while quantum meruit does not necessarily. On the contrary, quantum meruit frequently arises in a consensual transaction between the parties which has not been formalized and reduced to writing to create a binding and valid contract.

■ This is a strict commercial transaction whereby a third person procured an irrevocable letter of credit from the Bank for which the Bank, no doubt, received or expected to receive ample assurance of repayment and compensation from the third party. It was not a consensual arrangement between Munzenrieder and the Bank as far as it appears from this record and certainly was not monies received by mistake or by non-disclosure or any material fact whatsoever and, consequently, the doctrine of unjust enrichment has no application.

Based on the foregoing, this Court is satisfied that while the facts as they appear on this record are not without dispute, it is clear that the Bank is not entitled to a judgment as a matter of law. This leaves for consideration the Motion filed by the Debtor who is contending that there are no genuine issues of material fact and the Debtor is entitled to a judgment as a matter of law sustaining its objection to the Bank's claim and disallowing the claim. Having considered the matter together with the record as it was presented, this Court is satisfied that the proposition urged by the Debtor is correct and, therefore, its Motion for Summary Judgment should be granted and the claim shall be disallowed.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by European Asian Bank be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the Debtor be, and the same is hereby, granted, the Objection to Claim is sustained and Claim # 170 is disallowed.